IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Susan C. GLENNAN, | |
| Plaintiff, | Civil No. 18-02879 (RBK) |
| v. | **OPINION** |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the appeal (Doc. No. 1) of Susan C. Glennan ("Plaintiff") for review of the final decision of the Commissioner of Social Security. The Commissioner denied Plaintiff's application for Social Security Disability benefits, finding that Plaintiff was not disabled as defined by the Social Security Act. As explained below, the Commissioner's decision is **AFFIRMED**.

**I.     BACKGROUND**

**A.  Procedural History**

On August 22, 2014, Plaintiff applied for disability insurance benefits, alleging disability beginning December 12, 2013. (R. at 12.) Her application for benefits was initially denied on November 5, 2014, and again upon reconsideration on January 8, 2015. (R. at 12.) Plaintiff then requested a hearing, and on March 7, 2017, the Administrative Law Judge ("ALJ"), presiding from Chicago, Illinois, held a video hearing with Plaintiff in New Jersey. (R. at 12.) In a decision dated March 30, 2017, the ALJ found that Plaintiff was not disabled. (R. at 12–19.) On February 2,

2018, the Appeals Council denied Plaintiff's request for review. (R. at 1–5.) Plaintiff then filed this action.

**B. Plaintiff's History**

Plaintiff was born on August 13, 1968 and was 45 years old at the alleged onset date. (R. at 18.) Plaintiff completed at least her high school education. (R. at 18.) Plaintiff worked as a licensed practical nurse from 1991 to 1995. (R. at 234.) She was then a homemaker from 1995 to 2006, at which point she returned to work as a licensed practical nurse until August 2014. (R. at 234.) Plaintiff alleges that she has been disabled since December 12, 2013. (R. at 14.)

Plaintiff suffers from degenerative disc disease. (R. at 14.) At her administrative hearing, Plaintiff testified that she was in a car accident in 2016 while traveling as a passenger, that her neck and arm pain predated this accident, and that the accident exacerbated her pain. (R. at 31–32.) She testified that her daily pain causes her to spend her days alternating between using a heating pad, using her TENS unit, laying, sitting, and walking. (R. at 33.) Plaintiff stated that she is limited to driving 25 minutes, that she shops at the store with her sons or her husband, and that she wipes down counters but has her sister come help with cleaning. (R. at 33.) She further testified that she could not work in a doctor's office at a computer because she could not leave her arms outstretched. (R. at 34–35.) Plaintiff told the ALJ that she uses a Galaxy pad at home but can do so only for about 10 minutes. (R. at 35–38.)

**C. Plaintiff's Relevant Medical History**

Plaintiff underwent spinal surgery, specifically an anterior cervical decompression and fusion, on January 29, 2013 to alleviate pain caused by cervical spondylosis with radiculopathy. (R. at 417.) After her neck and arm pain resurfaced about one-year post-surgery and she stopped working (R. at 195, 414), Plaintiff underwent a second spinal surgery on January 14, 2014—a

2

posterior cervical fusion at C5-T1. (R. at 414.) At Plaintiff's follow-up visit with Alan Hilibrand, M.D. on February 5, 2014, Dr. Hilibrand reported full 5/5 strength in all upper extremity groups. (R. at 373.) Further, Plaintiff had normal strength in her upper extremities on March 26, 2014, and Dr. Hilibrand reported Plaintiff was doing "very well." (R. at 370.) On May 28, 2014, Plaintiff stated that she had no pain and experienced a better neck range of motion than before surgery. (R. at 367.) Dr. Hilibrand also observed that Plaintiff had full 5/5 strength in the upper extremities, 4/5 strength in the left intrinsics, and that he was "happy with her progress." (R. at 367.) At this visit, Dr. Hilibrand recommended that Plaintiff see a nonoperative sports medicine specialist. (R. at 367.)

Plaintiff saw the nonoperative sports medicine specialist, Mitesh Patel, M.D., on June 26, 2014. (R. at 364.) Dr. Patel examined Plaintiff and found no tenderness in her elbows, full elbow flexion and extension, no tenderness over the triceps tendon, no bilateral pain with resisted wrist flexion or extension, no pain or weakness in the forearm, and negative Tinel's sign in the cubital tunnel bilaterally. (R. at 364–65.) Dr. Patel opined that her pain might be neuropathic in nature due to her "unremarkable clinical examination." (R. at 365.)

On July 23, 2014, Plaintiff saw Michael Molter, D.O. for an electrodiagnostic and needle EMG of the left upper extremity, as well as for cervical paraspinals. (R. at 361.) Dr. Molter noted that Plaintiff had done "extremely well" since her second spinal surgery. (R. at 361.) He noted further that Plaintiff experienced some weakness with fine motor movements, but that she was not dropping items. (R. at 361.) Dr. Molter's examination revealed no evidence of ulnar neuropathy in the elbow and the needle EMG changes were suggestive of chronic lower cervical radiculopathy. (R. at 362.) When Plaintiff saw Dr. Molter again on October 3, 2014, she showed normal range of motion in the upper extremities, full 5/5 strength in the upper extremities, slight weakness in

hand instrinsics resulting in 4/5 strength, and reflexes measured at 2+/4 bilaterally in the upper extremities. (R. at 712–13.) She tested negative for Tinel's, Spurling's, and Hoffman's. (R. at 713.) Plaintiff showed significant cervical paraspinal tenderness. (R. at 713.)

Plaintiff showed normal strength in December 2015 and January 2016 (R. at 850, 853), but she was in a car accident in February 2016 that aggravated her neck pain. (R. at 715–17.) Following the accident, Plaintiff's x-rays showed no significant foraminal narrowing. (R. at 720.) In September 2016, her cervical scan showed only minor degenerative changes. (R. at 849.) Plaintiff also received nerve block injections, which she reported in February 2017 provided her with seventy-five percent relief. (R. at 844.)

The record also contains physical evaluations by state medical consultants. (R. at 63–65, 78–80.) First, Raymond Briski, M.D. opined that Plaintiff was limited to frequent handling and fingering with the left extremity. (R. at 65.) Dr. Briski concluded Plaintiff was capable of light work. (R. at 63.) On December 29, 2014, Caroline Shubeck reviewed the evidence and affirmed Dr. Briski's conclusion. (R. at 80.)

Additionally, the state medical consultants performed a mental evaluation of Plaintiff. (R. at 65–67, 80–82.) Joan F. Joynson reported on November 5, 2014 that Plaintiff had no understanding or memory limitations (R. at 65) or social interaction limitations (R. at 66.) But the state consultant reported that Plaintiff was moderately limited in concentration and persistence as well as adaptation. (R. at 65–66.) On January 7, 2015, Joseph Wieliczko reviewed the evidence and affirmed the opinion of the November 2014 finding. (R. at 82.)

As to other mental status evidence in the record, Lawrence G. Mintzer, Ph.D. completed a mental status consultation on November 3, 2014. (R. at 693–95.) Dr. Mintzer's report included various objective findings, including that Plaintiff seemed a bit depressed and her affect was mildly

4

constricted, but that her speech was coherent, her abstract thinking was good, her fund of knowledge was fairly good, her remote memory was good, her recent memory was fair, and her impulse control was good. (R. at 695.) Dr. Mintzer opined that Plaintiff's limitations were moderate to severe in degree. (R. at 695.)

### D. Plaintiff's Adult Function Report

Plaintiff self-reported her capabilities in an Adult Function Report, which she completed on September 15, 2014. (R. at 225–32.) She claimed that her days consist of laying on a heating pad and watching television. (R. at 226.) She reported that her husband prepares lunches and dinners but that she prepares "[l]ight meals like sandwiches" monthly. (R. at 226–27.) Plaintiff reported no problems with her personal care other than caring for her hair due to the pain associated with holding her arms up for long. (R. at 226.) She noted that she does not need reminders to take her medicine or to groom herself or take care of her personal needs. (R. at 227.) Plaintiff reported that she is unable to do any household chores, but that she can pay her bills and handle her finances. (R. at 227–28.) She asserted that she spends time with others, either in person or by computer, every day. (R. at 229.) When asked if she can "go out alone," Plaintiff answered "yes," she could go out alone; however, when asked one page later if she "need[s] someone to accompany [her], Plaintiff marked "yes," she needs to be accompanied in order to go places. (R. at 228–29.) Further, Plaintiff reported that her condition affects: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, concentration, and using her hands. (R. at 230.) She noted that she gets along with authority figures "well," she handles stress "well," and she handles changes to routine "well." (R. at 231.)

5

### E. Third-Party Adult Function Report

Plaintiff's husband, Robert Glennan, completed a Third-Party Adult Function Report dated September 12, 2014. (R. at 216–23.) Mr. Glennan reported that Plaintiff spends her days doing restful activities like sitting and reading and she lays on her heating pad. (R. at 216.) He noted that he makes almost all of the meals and cares for the kids. (R. at 216.) He further noted that Plaintiff's conditions impact her ability to bathe and care for her hair, as she experiences difficulty reaching her arm up to her head. (R. at 217.) Mr. Glennan reported Plaintiff does not need reminders to take medication or to groom herself or care for her personal needs. (R. at 218.) He explained that he cooks the meals and does the housework to "alleviate the work." (R. at 218–19.) Mr. Glennan reported he and Plaintiff go food shopping together so that he can "pick up items and carry groceries purchased." (R. at 219.) Mr. Glennan also reported that Plaintiff's "writing ability [ha]s significantly decreased due to loss of muscular control of [her] left hand." (R. at 220.) He asserted Plaintiff reads on occasion but not often because looking down and sitting upright for too long hurts her neck, and that she occasionally sits and spends time with others. (R. at 220.) Mr. Glennan noted that Plaintiff is "[a]lways [a]greeable" when it comes to dealing with authority figures, she handles stress "very well," and she handles changes in routine "normal[ly]." (R. at 222.)

### F. The Vocational Expert's Testimony

At Plaintiff's administrative hearing, the vocational expert ("VE"), Ms. Sandy Steele, opined that Plaintiff could not return to her past work as a licensed practical nurse. (R. at 45.) The ALJ asked the VE to consider a hypothetical individual with Plaintiff's vocational characteristics, including an RFC of unskilled, light work, who was limited to no overhead work with the left dominant arm; frequent fingering, handling, and reaching with the left arm and hand; and with no

limitations on the right extremity. (R. at 45.) The VE testified that the individual would be capable of performing the following jobs: (1) general office clerk characterized as unskilled, light work with an SVP of 2; (2) retail cashier characterized as unskilled, light work, with an SVP of 2; and (3) bench assembler or factory assembler characterized as unskilled, light work, with an SVP of 2; each of which existed in significant numbers in the national economy. (R. at 46.)

### G. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process for determining disability claims and found that Plaintiff was not disabled on March 30, 2017. *See* 20 C.F.R. § 404.1520(a)(4). First, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 12, 2013 through her date last insured. (R. at 14.) Second, the ALJ determined that Plaintiff had the severe impairment of degenerative disc disease, but that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app'x 1. (R. at 14–16.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). (R. at 16.) Finally, based on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a licensed practical nurse, but that other jobs existed in the national economy that Plaintiff could perform. (R. at 18–19.) Therefore, the ALJ found that Plaintiff was not disabled during the relevant period and denied her application for benefits. (R. at 19.)

## II.     LEGAL STANDARD

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ used the established five-step evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520(a)(4).

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak*, 777 F.3d at 611–12. First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical or mental impairment" that lasted for a continuous period of at least twelve months. *Id.* §§ 404.1520(a)(4)(ii), 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. *Id.* § 404.1520(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that she cannot perform her past work, and the ALJ must assess the claimant's RFC. *Id.* § 404.1520(a)(4)(iv), (e).

If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant is capable of performing based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

Here, Plaintiff makes four arguments. First, Plaintiff argues that the ALJ erred in classifying her mental impairment as non-severe at step two. (Doc. No. 8 ("Pl.'s Br.") at 21.) Second, Plaintiff argues that the ALJ incorrectly determined that Plaintiff's cervical spine impairment did not meet the requirements of Listing 1.04 at step three. (*Id.* at 25.) Third, Plaintiff claims that the ALJ erred in evaluating Plaintiff's RFC. (*Id.* at 27.) Fourth, Plaintiff argues that the ALJ improperly relied on the VE's testimony in concluding that Plaintiff could perform alternative work. (*Id.* at 30.) Plaintiff is mistaken on all counts.

## A. Substantial Evidence Supports the ALJ's Step Two Conclusion

Plaintiff argues that the ALJ erred by finding her alleged mental impairments, including affective disorder, non-severe. (Pl's Br. at 21.) An impairment is considered "severe" if it "significantly limits an individual's physical or mental abilities to do basic work activities." *Williams v. Comm'r of Soc. Sec. Admin.*, No. 12-cv-5637, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013).

In making this determination, the ALJ evaluated Plaintiff's alleged mental impairments against the four functional areas set out in the disability regulations, including Plaintiff's ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. (R. at 14–15.) The ALJ determined that Plaintiff had only a mild limitation in understanding, remembering, or applying information; no limitation in interacting with others; and mild limitations in concentrating, persisting, or maintaining pace and adapting or managing herself based on her subjective statements and evidence from her 2014 examination with Dr. Mintzer. (R. at 14–15, 693–95.)

Plaintiff contends that the ALJ erred because his findings were "either conclusory, relied on tendentious implications of the evidence, or cherry-picked the evidence to reach a conclusion that cannot be considered reasonable in light of the entire record." (Pl.'s Br. at 22.) The Court disagrees. Substantial evidence supports each of the ALJ's conclusions.

First, substantial evidence supports the ALJ's determination that Plaintiff had only mild limitations in her ability to understand, remember, or apply information. Among other things, the ALJ explained that Plaintiff followed along with the hearing, reported using a computer, showed average intelligence, recalled what she ate for dinner, could repeat six digits forwards and three in reverse, and could spell the word "world" both forwards and backwards. (R. at 14; *see also* R. at

694–95.) Contrary to Plaintiff's suggestion that such evidence "relate[s] not at all" to the relevant criteria (Pl.'s Br. at 22), it adequately supports the ALJ's finding.

Second, substantial evidence supports the ALJ's determination that Plaintiff had no limitation interacting with others because as the ALJ found, Plaintiff reported that she talked with others on the computer daily, reported no problems getting along well with others, had never been fired for such problems, and showed a cooperative attitude. (R. at 15; *see also* R. at 229, 231, 779.) Although Plaintiff claims that the ALJ took Plaintiff's own statements out of context because the reason she had no problems getting along with others is because she rarely goes anywhere, the ALJ reasonably relied on this substantial evidence in making his finding. (Pl.'s Br. at 23.) Accordingly, it may not be set aside. *See Fargnoli*, 247 F.3d 38.

Third, substantial evidence supports the ALJ's conclusion that Plaintiff had only a mild limitation in concentration, persistence, and pace. (R. at 15.) The ALJ acknowledged that according to Plaintiff, she could not work an office job because her pain disrupts her concentration. (R. at 15, 40.) But the ALJ also noted contrary evidence that suggested otherwise, including evidence that Plaintiff appeared alert and oriented during examinations, that she could repeat six digits forward and three in reverse, that she could spell the word "world" both forwards and backwards, and that Plaintiff could complete serial seven's with only one error. (R. at 15; *see also* R. at 694, 695, 779.) In effect, Plaintiff disagrees with the ALJ's weighing of the evidence. But this Court may not re-weigh it. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").

Fourth, substantial evidence supports the ALJ's conclusion that Plaintiff had only a mild limitation in adapting or managing herself because as the ALJ found, Plaintiff drove short

11

distances, could shop with others present, shops by the computer, and can clean, prepare light meals and pay bills. (R. at 15; *see also* R. at 33, 34, 227, 228.) Although Plaintiff attempts to qualify these abilities by suggesting Plaintiff is more limited than the ALJ believed, the ALJ accurately recited the evidence, and Plaintiff's argument does not contradict the ALJ's findings. (Pl.'s Br. at 24.) Plaintiff also argues that contrary to the ALJ's findings, Dr. Mintzer assessed Plaintiff's limitations as moderate to severe. (*Id.*) But the ALJ properly afforded Dr. Mintzer's conclusion in this regard "little weight" because Dr. Mintzer's opinions were "contradicted by the conservative mental health treatment in the record," and Plaintiff's own "stable functioning during her consultative exam." (R. at 15.) Plaintiff does not explain why this was error.[1]

Moreover, even if the ALJ erred in not finding Plaintiff's mental impairment severe at step two, Plaintiff is still not entitled to remand because any such error is harmless. The ALJ ultimately ruled for Plaintiff by finding that she had at least one severe impairment and proceeded in the sequential analysis. (R. at 14; *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless." (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005))).

---

[1] Indeed, the ALJ properly assigned Dr. Mintzer's conclusion little weight when viewed in light of the rest of Dr. Mintzer's own report. In particular, Dr. Mintzer's mental status examination stated the following objective findings: Plaintiff was "oriented to person, place, and time"; she was "casually dressed and adequately groomed"; she "seemed a bit depressed"; "[h]er affect was mildly constricted"; her "thought processes were goal-directed"; "her speech was coherent"; she did not exhibit delusional thinking; her "abstract thinking is good"; "[h]er fund of knowledge is fairly good"; her capacity to do "simple calculations is somewhat poor"; her "concentration [i]s fairly good"; her intelligence is average; her "remote memory is good"; "[h]er recent memory is fair"; her "immediate retention and recall are fair"; her "impulse control is good"; her "social judgment is good"; and "[h]er insight is good." (R. at 694–95.)

## B. Substantial Evidence Supports the ALJ's Step Three Conclusion

Next, Plaintiff argues that the ALJ erred in finding that Plaintiff did not meet the criteria for presumptive disability under Listing 1.04. (Pl.'s Br. at 25–27.) Listing 1.04 is met with evidence of:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Part 404, Subpart P, App'x 1; § 404.1520(d).

To meet a Listing, Plaintiff must show that her impairments "meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (quoting *Sullivan v. Zebley*, 110 U.S. 521, 530 (1990)) (emphasis in original).

Here, the ALJ found that Plaintiff failed to meet her burden to show that she met all of Listing 1.04's criteria. Although Plaintiff suffered from degenerative disc disease (R. at 14), the ALJ concluded that the record does not support a finding of a compromised nerve root (including the cauda equina) or spinal cord *with* the additional required findings of either subsection A, B, or C. (R. at 16.)

Substantial evidence supports this conclusion. Plaintiff does not direct the Court to evidence that she meets all of Listing 1.04's criteria. Nor does Plaintiff analyze how any such evidence meets the Listing's criteria. Instead, Plaintiff simply points out that she developed radiculopathy and arm weakness. (Pl.'s Br. at 26.) As the Third Circuit has explained, a court has "no basis" to remand when a plaintiff "merely asserts that harm was done" but "entirely sidesteps the question" of "*how* [the plaintiff] might have prevailed [if the ALJ] had been more thorough." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (emphasis in original).

**C. Substantial Evidence Supports the ALJ's RFC Determination**

Next, Plaintiff challenges two aspects of the ALJ's determination that Plaintiff has an RFC to perform light work. First, Plaintiff claims that the ALJ erred because the RFC did not account for pain and alleged limitation in Plaintiff's left arm. (Pl.'s Br. at 27–29.) Second, Plaintiff claims that the ALJ improperly weighed the opinions of the state medical consultants. (*Id.* at 28–29.) [2] Such claims are meritless.

---

[2] Plaintiff also observes that the ALJ found no psychological impairments in assessing Plaintiff's RFC. (Pl.'s Br. at 27.) But that is a generic observation, not an argument, much less a developed one supported by legal or factual citation that clearly explains the error alleged. Accordingly, the Court does not construe Plaintiff's passing observation to constitute an independent challenge to the ALJ's RFC analysis. But to the extent it could be construed as an independent RFC challenge, the Court finds that the ALJ did not err, as he considered Plaintiff's alleged mental impairments in evaluating her RFC, noting her conservative mental health treatment record and Plaintiff's testimony and adult function report regarding activities of daily living. (R. at 17.)

The ALJ is responsible for "evaluat[ing] all relevant evidence and [for] explain[ing] the basis for his or her conclusions." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). If evidence is rejected, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 711 (3d Cir. 1981). The explanation need not be comprehensive; "in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). "Where inconsistency in evidence exists, the ALJ retains significant discretion in deciding whom to credit." *Ganges v. Comm'r of Soc. Sec.*, No. 17-cv-1982, 2018 WL 5342717, at *11 (D.N.J. Oct. 29, 2018) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). But the ALJ "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Here, substantial evidence supports the ALJ's RFC determination for light work despite Plaintiff's alleged left arm limitations. Specifically, in finding that Plaintiff could perform light work, the ALJ considered evidence that Plaintiff showed full strength in all extremities after her first spinal surgery. (R. at 17, 370.) The ALJ also noted that Plaintiff improved after her second spinal surgery and highlighted Plaintiff's assertion that she no longer dropped items. (R. at 17, 361.) The ALJ further considered that Plaintiff denied having neck or back pain in January 2016 (R. at 17, 853), her normal neck range of motion and normal gait in February 2016 (R. at 17, 717), her spinal x-rays from February 2016 showing no significant foraminal narrowing (R. at 17, 720), and her cervical scan from September 2016 showing only minor degenerative changes (R. at 17, 849.) In addition, the ALJ considered medical evidence that Plaintiff appeared healthy during medical examinations in January and February of 2017 (R. at 17, 832, 837), as well as Plaintiff's report that she experienced seventy-five percent relief from nerve block injections (R. at 17, 844.)

Relatedly, based on this and the other record evidence, the ALJ did not err in finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the record as a whole. (R. at 17.)

Nor did the ALJ err in assigning the opinions of the state medical consultants only some weight regarding Plaintiff's use of her hands and fingers. (R. at 17.) In this regard, the ALJ found the consultants' opinions not supported by the medical evidence. (R. at 17.) Given the substantial evidence of normal to full strength in Plaintiff's extremities, which the ALJ cited throughout his RFC determination (R. at 367, 370, 373, 850, 853), the ALJ's conclusion was proper.

### D. Substantial Evidence Supports the ALJ's Reliance on the VE's Testimony and His Alternative Work Finding

Finally, Plaintiff contends that the ALJ erred by relying on the VE's testimony in finding that Plaintiff could perform alternative work. Specifically, Plaintiff argues that "if the [RFC] is not accurate, then any determination as to alternative work activity is invalid." (Pl.'s Br. at 30.) Plaintiff similarly claims that "if the [RFC] found is not accurate . . . then hypothetical questions to a vocational witness predicated on that [RFC] and any responses cannot be considered substantial evidence." (*Id.*) Because these claims turn on the same arguments rejected above, this argument fails as well. As explained, substantial evidence supports the ALJ's findings.

## IV. CONCLUSION

For the reasons above, the Commissioner's decision is **AFFIRMED.** An Order shall issue.

Dated:   4/26/2019                                          /s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge